IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| DANIEL B. LOSHBAUGH, | ) | |
| | ) | |
| Plaintiff, | ) | CV-04-6281-ST |
| | ) | |
| v. | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| JO ANNE B. BARNHART, Commissioner, | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

STEWART, Magistrate Judge:

## **INTRODUCTION**

Plaintiff, Daniel B. Loshbaugh ("Loshbaugh"), brought this action pursuant to 42 USC § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits under Title II of the Social Security Act. For the reasons set forth below, the Commissioner's decision is reversed and this case is remanded for payment of benefits.

///

1 - FINDINGS AND RECOMMENDATION

## BACKGROUND

Loshbaugh was 46 years old at the time of the hearing. Tr. 295. He has two years of college and obtained a power plant mechanic certification. *Id.* His past employment includes equipment operator, truck driver, and cranberry farm worker. Tr. 78, 327-28. Since 2000, he has been unemployed, but running his own small cranberry farm. Tr. 328.

Loshbaugh applied for Disability Insurance Benefits ("DIB") on October 27, 2000, alleging disability as of April 28, 2000, because of debilitating back pain. Tr. 66-68, 77. After his application was denied initially and upon reconsideration, he requested a hearing, which was held before an Administrative Law Judge ("ALJ") on November 3, 2003. Tr. 49-60, 290. The ALJ issued a decision denying Loshbaugh's claim for benefits on February 25, 2004. Tr. 20-32. Loshbaugh requested review of the hearing decision, which was denied by the Appeals Council on June 24, 2004. Tr. 9-14. Accordingly, the ALJ's decision became the final decision of the agency from which Loshbaugh seeks judicial review.

## DISABILITY ANALYSIS

The initial burden of proof rests upon the claimant to establish disability. *Roberts v. Shalala*, 66 F3d 179, 182 (9th Cir 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 USC § 423(d)(1)(A). A claimant is disabled only if his impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in

the national economy. 42 USC § 423(d)(2)(A); *Tackett v. Apfel*, 180 F3d 1094, 1098 (9th Cir 1999).

The Commissioner has established a five-step sequential process for determining whether a person is disabled within the meaning of the act. *Bowen v. Yuckert*, 482 US 137, 140 (1987); 20 CFR § 404.1520. The plaintiff bears the burden of proof at steps one through four. *Tacket*, 180 F3d at 1098-99. At step five, the burden of production shifts to the Commissioner to identify jobs existing in significant numbers in the national economy that the claimant can perform given his residual functional capacity, age, education and work experience. *Id*; 20 CFR § 404.1560(c)(2).

At step one, the ALJ found that Loshbaugh had not engaged in substantial gainful activity since his alleged onset date, April 28, 2000. Tr. 24, 31 (Finding #2); 20 CFR § 404.1520(b).

At step two, the ALJ found that Loshbaugh had the severe impairment of a degenerative disc disease of the lumbosacral spine. Tr. 24, 31 (Finding #3); 20 CFR § 404.1520(c).

At step three, the ALJ found that Loshbaugh's impairment did not meet or equal the requirements of any listed impairment. Tr. 24, 31 (Finding #4); 20 CFR § 404.1520(d).

If the adjudication proceeds to step three, the Commissioner must also assess the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of the sustained work-related activities that the claimant can still do on a regular basis, despite limitations imposed by his impairments. 20 CFR §§ 404.1520(e), 404.1545. The ALJ determined that Loshbaugh had the RFC to perform light work, as long as the job: allowed the option to frequently alternate between sitting and standing and to occasionally bend and twist;

3 - FINDINGS AND RECOMMENDATION

and was limited to simple, repetitive tasks because of side-effects created by the pain medication that he requires. Tr. 30, 32 (Finding #6); 20 CFR § 404.1567 (defining exertional levels of work); Social Security Ruling ("SSR") 83-10, *available at* 1983 WL 31251 (same).

At step four, the Commissioner will find the claimant not disabled if he or she retains the RFC to perform work he or she has done in the past. 20 § CFR 404.1520(a). The ALJ found that Loshbaugh was not able to perform his past relevant work. Tr. 30, 32 (Finding #7).

If the adjudication reaches step five, the Commissioner must determine whether the claimant can perform other work that exists in the national economy. *Yuckert*, 482 US at 141-42; 20 CFR § 404.1520(f). Here the burden shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can do. *Yuckert*, 482 US at 141-42; *Tackett,* 180 F3d at 1099. If the Commissioner meets this burden, then the claimant is not disabled. 20 CFR § 404.1566. At step five, the ALJ found that, based on his RFC, Loshbaugh could perform work existing in the national economy as a parking lot attendant, office helper, and order clerk. Tr. 31, 32 (Finding #12).

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 USC § 405(g); *Andrews v. Shalala*, 53 F3d 1035, 1039 (9th Cir 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F2d 771, 772 (9th Cir 1986). The

Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. *Andrews*, 53 F3d at 1039-40. If substantial evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F3d 1152, 1156 (9th Cir 2001).

## DISCUSSION

Loshbaugh contends that the ALJ made four errors: (1) failing to give clear and convincing reasons for rejecting his testimony; (2) rejecting the opinion of Dr. Martha J. MacRitchie, a treating physician; (3) rejecting the lay witness testimony; and (4) failing to meet the burden of proof that Loshbaugh can perform other work existing in the national economy.

## I.  Rejecting Loshbaugh's Testimony

### A.  Objective Evidence of Loshbaugh's Impairment

Before the court can accept a claimant's subjective testimony about severity of symptoms, the claimant must establish the existence of an impairment and a causal relationship between the impairment and some level of symptoms. *Morgan v. Comm'r,* 169 F3d 595, 599 (9th Cir 1999).

Loshbaugh's medical history is replete with objective evidence of his condition, which demonstrates a worsening trend. Loshbaugh initially suffered a back injury in 1982 when he developed a disc herniation at L4-L-5, requiring both a discectomy and a segmental spinal fusion. Tr. 170. These surgical repairs served to ameliorate Loshbaugh's back condition until 1999, when, while splitting firewood, he suffered another herniated disc at L3-L4. Tr. 99, 170. There is ample objective evidence for this injury, most notably an MRI and the neurosurgical

5 - FINDINGS AND RECOMMENDATION

evaluation by Dr. Catherine Gallo, a neurosurgeon. Tr. 210-12. Because Loshbaugh had only mechanical back pain and experienced no radicular leg pain, Dr. Gallo determined that lumbar rehabilitation (physical therapy) was preferable to any available surgery. Tr. 170, 212.

The physical therapy initially worked for Loshbaugh, and his symptoms improved slightly. Tr. 171. However, by June 23, 2000, Loshbaugh had developed "foot drop" on the right, a symptom consistent with radiculopathy and a worsening of the herniation at L3-L4. Tr. 196. In light of the worsening symptoms, Loshbaugh and his doctors decided to perform a complete laminectomy at L-4, a complete bilateral facetectomies at L4-L5, a discectomy at L4-L5, and an anterior arthrodesis (fusion) bilaterally at L4-L5. Tr. 195. This surgery was performed on August 30, 2000. Tr. 185-87.

Although Loshbaugh's pain abated to some degree at first, as of November 30, 2000, his physicians were still counseling against his returning to work. Tr. 208-09, 254. Nevertheless, even post-surgery, objective tests indicated that Loshbaugh had ongoing problems. On March 9, 2001, he lacked deep-tendon reflexes at the right ankle and at both hamstrings bilaterally. Tr. 248. By April 13, 2001, he had developed pain, numbness, and a new weakness in the left leg. Tr. 247. Electrodiagnostic studies revealed significant denervation bilaterally throughout the lumbar paraspinal muscles and within the sciatic nerve. *Id*; Tr. 244. On November 12, 2001, Dr. MacRitchie offered the following summary of Loshbaugh's condition:

> Mr. Loshbaugh's MRI findings document both a spinal stenosis and possible herniated nucleus pulposuses. This is associated with pain and significant limitation of motion in the spine, as well as radicular findings in both legs both clinically and on EMG studies.

Tr. 241.

Loshbaugh sought further treatment at OHSU's Pain Management Center. Tr. 181. After exploring different pain management options, he settled on Oxycontin as the most effective method of combating his pain. Tr. 279, 283. Despite the fact that exercise and physical therapy tended to exacerbate his symptoms, Loshbaugh managed to keep in good physical condition. *Id*. He declined trial treatment with a spinal cord stimulator, a battery-powered surgically implanted electronic device that is sometimes an effective tool in pain management. Tr. 265, 284.

In sum, the record reveals not only a medically objective basis for Loshbaugh's back pain, but also an admirable effort by Loshbaugh in managing a difficult ailment.

**B.    Loshbaugh's Testimony**

Loshbaugh testified that he and his wife own a small cranberry farm. Tr. 296, 298. He was able to oversee its operation, but not to do the manual labor required which he hires out. Tr. 297-98. Loshbaugh's family has had difficulty servicing the debt on the farm. Tr. 298-99.

After his August 30, 2000 laminectomy, his pain symtoms were manageable, but began to worsen. Tr. 299. He attempted to keep working around the farm and the house, looking for ways to arrange his schedule and duties that minimized his pain. *Id*. He was unable to return to his full-time work with other cranberry growers and unable to sustain prolonged physical activity because of back pain. Tr. 299-300, 304. His symptoms are eased to some degree by the ability to change position from sitting to standing and the ability to move around, but his pain requires him to lie down for significant portions of the day and interrupts his sleep at night. Tr. 304, 308.

Loshbaugh's daily routine begins by taking Oxycontin, after which he lies down for an hour, waiting for the medication to take effect. Tr. 305. Typically, depending on the weather, he will then go outside to inspect his farm, checking to see that the irrigation is functioning

7 - FINDINGS AND RECOMMENDATION

properly. Tr. 306. After two or three hours, he returns to the house to take his next dose of Oxycontin and to lie down for another hour. Tr. 307. Generally, he is able to go back outside and attend to the farm for another hour in the afternoon. *Id*. After that, he will spend the rest of the day resting on the sofa. *Id*. While outside, he is on his feet for periods of up to 45 minutes, but no longer. Tr. 311.

Because of his reliance on Oxycontin, his mind is not as clear as it used to be; he makes mistakes with his checkbook and while driving that he never did before. Tr. 310-11. Traveling by car is difficult for him because of the sitting required. Tr. 307-08. He testified that he could lift up to 20 pounds, sit comfortably for 10-15 minutes at a stretch and walk for half a mile. Tr. 118, 309-10.

Taken at face value, Loshbaugh's testimony establishes a disability because the symptoms he describes, particularly the level of pain, prohibit him from working an eight-hour day.

### C. The ALJ's Reasons

The ALJ found Loshbaugh "credible to the extent that his limitations are within the parameters of the [RFC] detailed above." Tr. 28. He concluded that Loshbaugh's "inability to work beyond his [RFC], e.g. as a cranberry farmer classified as medium, does not translate to a finding of disability" and that, contrary to his testimony, Loshbaugh could perform "light exertional activities on a regular and continuing basis." *Id*.

Once a claimant establishes the existence of an impairment and if there is no affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for rejecting a claimant's subjective claims. *Moisa v. Barnhart*, 367 F3d 882, 885 (9th Cir 2004). If an ALJ

finds that a claimant's testimony relating to the intensity of pain and other limitations is unreliable, then the ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive. *See Bunnell v. Sullivan*, 947 F2d 341, 345-46 (9th Cir 1991) (*en banc*). The ALJ's credibility determination must be based on findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Id.* In assessing a claimant's credibility the ALJ may consider: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) the objective medical evidence; (5) the location, duration, frequency, and intensity of symptoms; (6) precipitating and aggravating factors; (7) the type, dosage, effectiveness, and side effects of any medication; and (8) treatment other than medication. *Smolen v. Chater*, 80 F3d 1273, 1284 (9th Cir 1996).

The ALJ identified no contradictions in Loshbaugh's testimony or between his behavior and his testimony. Instead, he noted that no treating or examining source physician has stated that Loshbaugh cannot work a full eight-hour day, that Loshbaugh has demonstrated the ability to do work at light to medium levels in two physical capacity evaluations ("PCE"), and that "there has been no objective medically worsening" of his condition. Tr. 29.

These reasons are not sufficient to reject Loshbaugh's testimony as to the extent of his subjective pain. The pain reported by Loshbaugh is derived from a documented impairment (degenerative disc disease of the lumbosacral spine) and a documented causal relationship between the impairment and his symptoms. It is noteworthy that no doctor questioned

9 - FINDINGS AND RECOMMENDATION

Loshbaugh's credibility as to his symptoms. While the ALJ may be correct in noting that Loshbaugh's pain is greater than what might be expected, this observation alone does rise to the level of clear and convincing evidence. As explained by the Ninth Circuit:

> [D]espite our inability to measure and describe it, pain can have real and severe debilitating effects; it is, without a doubt, capable of entirely precluding a claimant from working. Because pain is a subjective phenomenon, moreover, it is possible to suffer disabling pain even where the degree of pain, as opposed to the mere existence of pain, is unsupported by objective medical findings. Referring to such pain as "excess pain," our cases have established a clear rule regarding its assessment: Once a claimant submits objective medical evidence establishing an impairment that could reasonably be expected to cause some pain, "it is improper as a matter of law for an ALJ to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings."

*Fair v. Bowen*, 885 F2d 597, 601 (9th Cir 1989), citing *Cotton*, 799 F2d at 1407; *see also Bunnell*, 947 F2d at 348 (explaining that *Cotton* correctly characterizes the appropriate analysis for evaluating pain in social security cases).

None of the reasons given by the ALJ to reject Loshbaugh's subjective pain are clear and convincing. As discussed above, the ALJ was wrong that there has been no objective medically worsening of his condition.

Even if the ALJ was correct that no treating or examining source physician stated that Loshbaugh is unable to work a full eight-hour day, the medical records do not contradict Loshbaugh's testimony as to his limitations. With respect to his daily activities, Loshbaugh admits that he is able to do some chores around the house and the farm. However, evidence that he can work at a medium or light level for brief periods of time does not prove that he can sustain that level of work for a full eight-hour work day. *See Fair*, 885 F2d at 603 (rejection of

10 - FINDINGS AND RECOMMENDATION

plaintiff's testimony allowed only when a substantial part of plaintiff's day is spent performing household chores or other activities that are transferable to a work setting); *see also Smolen*, 80 F3d at 1273, n7 ("the Social Security Act does not require a plaintiff to be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication"). Nothing in the record indicates that Loshbaugh is able to spend a substantial part of his day performing activities that are transferable to a work setting. Several daily hours of activity is simply not equivalent to an ability to work full-time.

The ALJ's conclusion that Loshbaugh's performance on two PCEs contradicts his testimony is misguided. As explained by Dr. MacRitchie, the two PCEs are "unable to anticipate full time sustained work levels" since "[a]t best, a PCE is a 2 or 6 hour examination." Tr. 16. In fact, the May 2001 PCE found that Loshbaugh's sitting and standing tolerances were each 1.5 hours per day or a total of three hours per day, which is consistent with Loshbaugh's testimony and inconsistent with an ability to work eight hours. Tr. 260.

The ALJ suggests that Loshbaugh's response to the "straight-leg raising test" contradicts his testimony. Tr. 29. Yet Dr. MacRitchie explains that this conclusion is flawed, and that, for Loshbaugh's condition, that diagnostic method is irrelevant. Tr. 17. The ALJ also suggests that Loshbaugh's decision not to use the spinal cord simulator and not seek further surgeries undermines his credibility. This court disagrees. Having had mixed results from invasive surgical procedures, Loshbaugh's decision to manage his condition conservatively is reasonable.

Because the ALJ failed to set forth clear and convincing reasons for rejecting

Loshbaugh's testimony, Loshbaugh's testimony should be credited "as a matter of law." *See Moisa,* 367 F3d at 887. That testimony establishes that he is disabled.

## II.     Rejecting Dr. MacRitchie's Opinion

Dr. MacRitchie gave two opinions in support of a finding of disability. First, in November 2001, she stated that she believed Loshbaugh's condition met the criteria of Listing 1.05C.[1] Tr. 241. Second, on April 5, 2004, after the hearing, she wrote that: (1) Loshbaugh's pain would interfere with his ability to sit, stand and walk for more than six hours; (2) Loshbaugh needs to lie down during the day; and (3) Loshbaugh's chronic pain was "related to the well-documented (both on follow up MRI and electrodiagnostic studies) permanent nerve root injury." Tr. 16-18.

If a treating physician's medical opinion is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Holohan v. Massanari,* 246 F3d 1195, 1202 (9th Cir 2001; 20 CFR § 404.1527(d)(2). An ALJ may reject the uncontradicted medical opinion of a treating physician only for "clear and convincing" reasons suported by substantial evidence in the record. *Holohan*, 246 F3d at 1202. Even if the treating physician's opinion is inconsistent with other evidence in the record, her opinions are still entitled to deference. *Id*, citing SSR 96-2p.

The ALJ rejected Dr. MacRitchie's first opinion, that Loshbaugh met the criteria for Listing 1.05C (at step two), because it was not supported by her closing examination and

---

[1] Listing 1.05C is now Listing 1.04C due to the reordering effective February 19, 2002. 66 Fed Reg 58010 (Nov 19, 2001).

because she did not refer to the listing in effect at the time of the hearing. Tr. 241. Loshbaugh argues that the ALJ erred in doing so. Because Loshbaugh's testimony, if credited, is sufficient to establish disability, as discussed above, the court need not address this issue.

What remains is whether the Commissioner properly disregarded Dr. MacRitchie's second opinion regarding Loshbaugh's disability presented in a post-hearing letter.[2] The Appeals Council found that Dr. MacRitchie's letter did not provide a basis for changing the ALJ's decision, explaining:

> Dr. MacRitchie's current opinion indicated that you have an impairment which can cause you pain. However, an assessment of the credibility of your complaints regarding the degree and frequency of your pain remains within the purview of the ALJ. The ALJ gave appropriate reasons for finding that your subjective complaints of pain, including the reports you made to Dr. MacRitchie, were not fully credible.

Tr. 10.

As noted above, the ALJ erred in assessing Loshbaugh's credibility. Dr. MacRitchie's letter provides an objective medical basis for Loshbaugh's symptoms and generally corroborates Loshbaugh's own testimony regarding his level of pain.

The Commissioner argues that Dr. MacRitchie's post-hearing opinion is inconsistent with her earlier opinion that Loshbaugh was able to perform light work. Tr. 15-16. That earlier opinion is contained in chart notes dated October 12, 2001 that Loshbaugh "has been released to light duty jobs." Tr. 242. However, Dr. MacRitchie also stated that she anticipated "waxing and

---

[2] Although Dr. MacRitchie's second opinion was solicited after the ALJ rendered his opinion, it was submitted to clarify her opinion in light of a statement by Dr. David M. Sibell at OHSU that Loshbaugh "is doing quite well from a movement and myofascial aspect." Tr. 284. That statement was contained in additional evidence obtained by the ALJ after the hearing to which Loshbaugh was invited to submit additional records "including a report from the treating physician." Tr. 154.

waning of symptoms" and did not address his ability to work on a sustained basis. *Id*. In later years, the record reveals that Loshbaugh's symptoms did worsen, adversely affecting his ability to work on a sustained basis.

For these reasons, the Commissioner should not have disregarded Dr. MacRitchie's second opinion.

## III. <u>Lay Testimony</u>

Alice Loshbaugh testified that her husband, who had previously been an active individual, was now limited in his activities as a result of his back pain. Tr. 316-17. In essence, she corroborates Loshbaugh's description of his daily routine, particularly his reliance on pain medication and his need to lie down regularly.

If lay evidence is significant and probative, the ALJ must supply reasons, supported by substantial evidence, for rejecting it. *Vincent on behalf of Vincent v. Heckler*, 739 F2d 1393, 1395 (9th Cir 1984). The ALJ rejected Mrs. Loshbaugh's testimony, stating that "while the claimant would be expected to have some pain, his reports and behavior at the hearing are not supported by objective medical findings, his reports to his surgeon and other providers are in total contradiction to the opinions of his physicians regarding his capabilities." Tr. 29. In other words, the ALJ rejected Mrs. Loshbaugh's testimony because Mr. Loshbaugh was not credible. As discussed above, the ALJ was incorrect in his assessment of Loshbaugh's credibility, and, as a result, improperly rejected Mrs. Loshbaugh's corroborating observations. Improperly rejected lay witness testimony may be fully credited as true on review. *Schnieder v. Comm'r,* 223 F3d 968, 976 (9th Cir 2000). Accordingly, Mrs. Loshbaugh's testimony should be credited to support Loshbaugh's evidence of disability.

The ALJ also rejected two letters submitted by Loshbaugh's hired helpers, Roald Young and Bob Fladger. Tr. 29. The letters simply stated that the workers helped Loshbaugh "harvest cranberries in 2000, 2001, [and] 2002 due to his physical limitations." Tr. 142, 143. The ALJ concluded that, because the letters were identical, it is "obvious that the claimant had them prepared and signed." Tr. 29. In fact, a subsequent letter from Mr. Young explains that the letters are identical because they were prepared by his wife (who is also Fladger's sister). Tr. 19. Thus, this testimony should be credited and, if so, serves to refute the ALJ's conclusion that "[i]n all probability," Loshbaugh's difficulty is caused by "doing more lifting, bending and stooping than he should" which "occasionally aggravates his back condition." Tr. 29.

## IV. "Other Work"

At step five, the ALJ concluded Loshbaugh could perform work existing in the national economy as a parking lot attendant, office helper, and order clerk. This conclusion was based on an RFC that included the ability to work a full eight hour day. The inability to work a full eight hour day conclusively establishes disability. SSR 96-8, *available at* 1996 WL 374184 ("RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day . . ."). Having credited Loshbaugh's testimony about the severity of his pain and his inability to work a full day, it is clear that Loshbaugh is unable to perform "other work," as defined within the Social Security Regulations and guidelines.

## RECOMMENDATION

The Commissioner's decision should be reversed and remanded for payment of benefits.

///

## **SCHEDULING ORDER**

Objections to the Findings and Recommendation, if any, are due **July 25, 2005**. If no objections are filed, then the Findings and Recommendation will be referred to a district court judge and go under advisement on that date.

If objections are filed, then a response is due within 10 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will be referred to a district court judge and go under advisement.

DATED this 6th day of July, 2005.

/s/ Janice M. Stewart
Janice M. Stewart
United States Magistrate Judge